# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 2 2 2014

JAMES N. HATTEN, Clerk

By: _____
Deputy Clerk

| | |
|---|---|
| AMERICAN BANK OF COMMERCE, KC POLICE CREDIT UNION, and SUNCOAST CREDIT UNION,   individually and on behalf of all   other similarly situated payment   card issuers, <br><br>PLAINTIFFS<br><br>v.<br><br>THE HOME DEPOT, INC.,<br><br>DEFENDANT | § § § § § § § § § § § § § § § |

**CAP**

CIVIL ACTION NO. _____

**1:14 - CV - 3391**

CLASS ACTION COMPLAINT
AND JURY DEMAND

## CLASS ACTION COMPLAINT AND JURY DEMAND

John E. Suthers
**SUTHERS LAW FIRM**
119 West Perry Street
Savannah, GA 31401
Telephone: (912) 232-6767
Facsimile: (912) 232-1958
Email: jes@sutherslaw.com

Richard L. Coffman
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email:rcoffman@coffmanlawfirm.com

Mitchell A. Toups
**WELLER, GREEN, TOUPS
& TERRELL, LLP**
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 838-6780 (FAX)
Email: matoups@wgttlaw.com

G. Robert Blakey
Professor of Law Emeritus
Notre Dame Law School*
7002 East San Miguel Ave.
Paradise Valley, AZ 85253
Telephone: (574) 514-8220
Email: blakey.1@nd.edu
* Noted for identification only

# TABLE OF CONTENTS

NATURE OF THE CASE ........................................................................................1

JURISDICTION AND VENUE ...........................................................................11

PARTIES...............................................................................................................11

FACTS ..................................................................................................................14

    I.  Payment Card Transactions on the Visa and MasterCard Networks ............14

    II. Home Depot knew its internal computer network and point-of-sale system were not properly protected and/or PCI DSS compliant as early as 2009 ....16

    III. The Home Depot Data Breach.....................................................................18

    IV. The Home Depot Data Breach never should have happened.......................20

    V. Although Home Depot has accepted full responsibility for the Data Breach, it has not offered to compensate Plaintiffs and Class Members for their damages ......................................................................................................23

HOME DEPOT'S PATTERN OF UNLAWFUL ACTIVITY UNDER THE FEDERAL RICO STATUTE AND GEORGIA RICO ACT: INTERSTATE AND/OR FOREIGN WIRE FRAUD IN VIOLATION OF 18 U.S.C. § 1343 AND GA. CODE ANN. § 16-14-3(9)(A)(xxix) ...............................24

CLASS ACTION ALLEGATIONS .......................................................................30

CLAIMS FOR RELIEF/CAUSES OF ACTION ...................................................31

    COUNT I.    Violation of 18 U.S.C. § 1962(c) .................................................31

    COUNT II.   Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(a) ........................................................39

    COUNT III.  Violation of 18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. § 1962(c) ........................................................43

COUNT IV.   Violation of GA. CODE. ANN. § 16-14-4(b) .................................48

COUNT V.   Violation of GA. CODE. ANN. § 16-14-4(c) by Conspiring to Violate GA. CODE. ANN. § 16-14-4(a).........................................52

COUNT VI.   Violation of GA. CODE. ANN. § 16-14-4(c) by Conspiring to Violate GA. CODE. ANN. § 16-14-4(b).........................................56

COUNT VII.  Negligent Misrepresentation .......................................................61

COUNT VIII. Negligence/Gross Negligence......................................................63

COUNT IX.   Negligence *Per Se*........................................................................67

COUNT X.   Breach of Implied Contract..........................................................69

COUNT XI.   Breach of Contracts to which Plaintiffs and Class Members are Third-Party Beneficiaries ....................71

COUNT XII.  Unjust Enrichment/Assumpsit .....................................................72

RELIEF REQUESTED..............................................................................................74

PRAYER....................................................................................................................77

JURY DEMAND .......................................................................................................79

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs American Bank of Commerce, KC Police Credit Union, and Suncoast Credit Union (collectively, "Plaintiffs"), individually and on behalf of all other similarly situated payment card issuers nationwide (the "Class Members"), complain of the actions of Defendant The Home Depot, Inc. ("Home Depot"), and respectfully state the following:

## NATURE OF THE CASE

1. This is a RICO case. Home Depot is the world's largest home improvement specialty retailer. Plaintiffs and Class Members are financial institutions and other entities that issued over 56 million Visa and MasterCard branded credit cards and debit cards (collectively, "payment cards") that were compromised by a five-month continuous data breach within Home Depot's internal computer network, from approximately April 2014 through September 8, 2014 (and possibly longer) (the "Home Depot Data Breach" or "Data Breach"). As a direct and/or proximate result of the Data Breach, Plaintiffs and Class Members have incurred (and will continue to incur) damages to their businesses and/or property in the form of, *inter alia*, expenses to cancel and reissue compromised payment cards, absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business

1

opportunities.

2.      As part of the Data Breach, hackers hijacked sensitive information residing on the magnetic stripe of the compromised payment cards.  The hackers had an open door into Home Depot's point-of-sale (or cash register) system within its internal network of systems.  The hackers waltzed through the open door and installed malware on Home Depot's point-of-sale terminals, the payment card swiping machines at Home Depot checkout counters, in each of Home Depot's retail locations in the United States.  The malware "skimmed" or "scraped" customer names, payment card numbers, expiration dates, CVV codes (Card Verification Value codes), and PIN numbers—also known as "track data"—from payment card transactions, stored the stolen payment card information in a hijacked control server within Home Depot's internal network, and later transmitted the stolen information to the hackers via the Internet.

3.      Illicit websites immediately began selling the stolen payment card information "dumps" to international card counterfeiters and fraudsters and issuing financial institutions attempting to mitigate their risk.  Crooks can create counterfeit credit cards by encoding the stolen payment card information onto any card with a magnetic stripe, and use the counterfeit cards to make fraudulent purchases.  Fraudsters also can create fake debit cards with the stolen payment

card information, and withdraw cash from the bank accounts of unsuspecting victims through ATMs.  Confirmed fraud involving the stolen payment card information was detected by multiple payment card processing companies well before September 8, 2014, the date Home Depot first reported the Data Breach to the general public.

4.     From a damage perspective, the Data Breach is shaping up to be one of the worst data breaches in history as the fraudulent use of the stolen payment card information is pervasive and disturbingly audacious.

5.     The Home Depot Data Breach could have been prevented.  As early as 2009, data security experts urged Home Depot to install encryption technology to fix a flaw that continues to exist regarding the sensitive information contained in the magnetic stripes on the back of payment cards.  In 2011, Home Depot failed to properly update its antivirus software for its point-of-sale systems, despite pleas from its internal data security personnel.  Other attempts to upgrade and improve its data security between 2011 and 2014 were shot down by Home Depot senior management because of the perceived cost and potential disruption of critical business systems.  On further information and belief, Home Depot also was not in full compliance with the Payment Card Industry Data Security Standards ("PCI

3

DSS").[1]

6.      Home Depot's anti-data security corporate culture culminated in two small data breaches in 2013 that put, or should have put, Home Depot on notice regarding the vulnerability of its computer systems.   Home Depot, however, ignored the threat, as well as an October 2013 report prepared by consultant FishNet Security at Home Depot's request that informed Home Depot that its data security practices were putting its computer systems at significant risk.   Only after the massive Target data breach did Home Depot attempt to upgrade and improve its data security policies, procedures and protocols—but by then it was too late. The data thieves were already deep in Home Depot's systems.   By the time Home Depot learned on September 2, 2014 from financial institutions and law enforcement that it had been breached, the hackers had stolen millions of customers' payment card information.

7.      At all relevant times, Plaintiffs and Class Members were (and continue to be) members of the Visa and MasterCard Networks.   Since at least 2009 (and possibly earlier), Home Depot engaged in unlawful and intentional schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money,

---

1      *See*   www.pcisecuritystandards.org/security_standards/documents.php?
document=pci_dss_v2-0#pci _dss_v2-0.

4

funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently, intentionally, and uniformly misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment.

5

Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true.

8.     By doing so, Home Depot (i) directly and/or proximately caused Plaintiffs and Class Members to suffer injury and damages to their businesses and/or property, (ii) saved the cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems, and (iii) wrongfully shifted the risk and expense of the Data Breach to Plaintiffs and Class Members.  Home Depot intentionally engaged in these wrongful actions, inaction and/or omissions for its financial benefit and to Plaintiffs' and Class Members' financial detriment.

9.     Plaintiffs, for themselves and Class Members, bring this action against Home Depot as a national class action under Title XI ("RICO") of Public Law 91-452, 84 Stat. 922 (1970) (as codified at 18 U.S.C. §§ 1961–1968, as amended) and the Georgia RICO Act, GA. CODE. ANN. § 16-14-1, *et seq*., for engaging in the above-described unlawful and intentional schemes.  At all relevant times, by its wrongful actions, inaction and/or omissions, Home Depot conducted and participated, directly and/or indirectly, in the affairs of the Visa Network and MasterCard Network (the RICO enterprises) through a pattern of unlawful activity—to wit, Home Depot engaged in repetitious and systematic interstate

6

and/or foreign wire fraud in violation of 18 U.S.C. § 1343 and GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343) by using or causing the use of the wires in interstate and foreign commerce to intentionally, repeatedly and systematically devise, engage in, condone and/or ratify the above-described schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently, intentionally, and uniformly misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data— including the stolen and compromised payment card information.

7

10.    Home Depot's wrongful actions, inaction and/or omissions, as it well knew and intended, and without legal justification, unlawfully cheated Plaintiffs and Class Members out of money, funds, credits, assets, and/ or other property owned by, or under the custody or control of, Plaintiffs and Class Members and/or induced Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires with full knowledge its customer data security policies, procedures, protocols, and hardware and software systems, in fact, did not safeguard and protect sensitive customer data—including the stolen payment card information.

11.    At all relevant times, by its wrongful actions, inaction and/or omissions, Home Depot (i) conducted or participated in the affairs of the Visa and MasterCard Networks (the RICO enterprises) (in violation of 18 U.S.C. § 1962(c)), (ii) conspired to violate 18 U.S.C. § 1962(a) and (c) (in violation of 18 U.S.C. § 1962(d)), (iii) conducted or participated in the affairs of the Visa and MasterCard Networks (the RICO enterprises) (in violation of GA. CODE. ANN. § 16-14-4(b)), and/or (iv) conspired to violate GA. CODE. ANN. § 16-14-4(a) and (b) (in violation of GA. CODE. ANN. § 16-14-4(c)).

12.    Home Depot agreed to commit (and committed) these substantive

8

RICO offenses (*i.e.*, the above-described unlawful and intentional schemes through the RICO enterprises (*i.e.*, the Visa Network and MasterCard Network)) by engaging in multiple predicate acts of interstate and/or foreign wire fraud—all the while knowing of, and intentionally agreeing to, the overall objective of the schemes with full knowledge that its customer data security policies, procedures, protocols, and hardware and software systems, in fact, did not safeguard and protect sensitive customer data, including the stolen payment card information— thereby subjecting Plaintiffs and Class Members to, *inter alia*, the risk, expense and obligation of cancelling and reissuing the payment cards and absorbing fraudulent charges made on the compromised payment cards.   Home Depot engaged in these schemes for the purpose of increasing its revenue, profitability, and return on investment—to the financial detriment of Plaintiffs and Class Members.

13.   Home Depot knew, and intentionally so acted, that Plaintiffs and Class Members are part of the Visa and MasterCard Networks and would rely and, in fact, relied on merchants that—such as Home Depot—that accept Visa and MasterCard payment cards to implement the appropriate customer data security policies, procedures, protocols, and hardware and software systems—especially in the merchants' point-of-sale systems.   Home Depot also knew, and intentionally

so acted, that its above-described wrongful actions, inaction and/or omissions were fraudulent, misleading and unlawful, and would unlawfully cheat and defraud Plaintiffs and Class Members in their businesses and/or property, thereby taking unlawful and unfair advantage of Plaintiffs and Class Members.

14. In addition to violating the federal RICO statute and the Georgia RICO Act, Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute negligent misrepresentation, negligence/gross negligence, negligence *per se*, breach of implied contract, breach of a contract to which Plaintiffs and Class Members are third-party beneficiaries, and unjust enrichment and/or assumpsit.

15. Plaintiffs, for themselves and Class Members, seek to recover from Home Depot their (i) actual, consequential, incidental and/or statutory damages, (ii) punitive damages, (iii) federal and state RICO treble damages, (iv) equitable relief in the form of disgorgement of gross revenues earned on payment card purchases, (v) injunctive relief to require Home Depot to implement the proper customer data protection policies, procedures, protocols, hardware and/or software systems and discontinue its above-described schemes, wrongful actions, inaction and/or omissions, (vi) pre- and post-judgment interest, (vii) attorneys' fees, litigation expenses, court costs, and (viii) such other relief as the Court may deem

10

just and proper.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over Plaintiffs' claims under

(i) 18 U.S.C. § 1961, *et seq.,* under 18 U.S.C. § 1964(a); (c) (RICO); (ii) 28 U.S.C.

§ 1332(d) (CAFA), because (a) there are 100 or more Class Members, (b) at least

one Class Member is a citizen of a state diverse from the citizenship of Home

Depot, and (c) the matter in controversy exceeds $5,000,000 USD, exclusive of

interest and costs; and (iii) 28 U.S.C. § 1367 (supplemental jurisdiction). This

Court has *in personam* jurisdiction over Home Depot because at all relevant times,

Home Depot resided, was found, had agents, and/or conducted business in the

Northern District of Georgia, and continues to do so.

17.     At all relevant times, Home Depot resided, was found, had agents,

and/or conducted business in the Northern District of Georgia.   Accordingly, venue

is proper in the Northern District of Georgia under 28 U.S.C § 1391(a) and 18

U.S.C § 1965.

## PARTIES

18.     Plaintiff American Bank of Commerce ("ABC") is a Texas financial

institution with its principal place of business in Wolfforth, Texas.   ABC issued

MasterCard branded payment cards that were compromised by the Data Beach.   As a

direct and/or proximate result of Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, ABC has incurred (and will continue to incur) damages to its business and/or property in the form of, *inter alia*, expenses to cancel and reissue the compromised payment cards it issued and the absorption of fraudulent charges made on the compromised payment cards.

19. Plaintiff KC Police Credit Union ("KCPCU") is a Kansas financial institution with its principal place of business in Kansas City, Kansas. KCPCU issued Visa branded payment cards that were compromised by the Data Beach. As a direct and/or proximate result of Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, KCPCU has incurred (and will continue to incur) damages to its business and/or property in the form of, *inter alia*, expenses to cancel and reissue the compromised payment cards it issued and the absorption of fraudulent charges made on the compromised payment cards.

20. Plaintiff Suncoast Credit Union ("Suncoast") is a Florida financial institution with its principal place of business in Tampa, Florida. Suncoast issued Visa branded payment cards that were compromised by the Data Beach. As a direct and/or proximate result of Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Suncoast has incurred (and

12

will continue to incur) damages to its business and/or property in the form of, *inter alia*, expenses to cancel and reissue the compromised payment cards it issued and the absorption of fraudulent charges made on the compromised payment cards.

21. Defendant Home Depot is a Delaware corporation with its principal place of business in Atlanta, Georgia. Home Depot is the world's largest home improvement specialty retailer with over 300,000 employees and over 2250 stores located in all fifty states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Guam, Canada, and Mexico. Home Depot's fiscal year 2014 gross revenue was over \$78 billion. Home Depot is ranked 33rd on the Fortune 500 (2014) and is a component of the Dow Jones Industrial Average and the Standard & Poor's 500 index. Home Depot is publicly traded on the New York Stock Exchange (symbol: HD).

22. At all relevant times, Home Depot engaged in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions that directly and/or proximately caused Plaintiffs and Class Members to suffer damages to their business and/or property in the form of, *inter alia*, expenses to cancel and reissue the compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards. Home Depot engaged in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions for the purpose of inducing Plaintiffs and Class Members to issue

13

payment cards used to make purchases at Home Depot and/or approve payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Home Depot may be served with Summons and a copy of this Class Action Complaint and Jury Demand by serving its registered agent for service of process, CSC of Cobb County, Inc., 192 Anderson Street, S.E., Suite 125, Marietta, Georgia 30060.

## FACTS

**I.     Payment card transactions on the Visa and MasterCard Networks.**

23.    The Visa and MasterCard Networks are principally composed of acquiring banks (*i.e.*, financial institutions that contract with merchants to process their Visa and MasterCard payment card transactions) and payment card issuers (such as Plaintiffs and Class Members).

24.    A typical payment card transaction made on the Visa and MasterCard Networks has multiple moving parts handled by several different parties. A transaction is initiated by a merchant (here, Home Depot), electronically sent to the acquiring bank, processed by a payment card transaction processor (*i.e.*, an entity retained by the acquiring bank to actually process the transaction), and authorized by the payment card issuer (here, Plaintiffs and Class Members).

25.     When a payment card purchase is made on the Visa Network,[2] the merchant seeks authorization from the issuer, which approves or declines the transaction based on the consumer's payment card limit.  If the transaction is approved, the merchant processes the transaction and electronically forwards the receipt directly to the acquiring bank.  The acquiring bank then pays the merchant and forwards the final transaction data to the issuer which, in turn, reimburses the acquiring bank.  The issuer then posts the charge to the consumer's payment card account, and bills and collects the purchase price from the consumer.

26.     In accordance with their respective rules, regulations and operating procedures, Visa and MasterCard monitor their respective Networks for potential fraudulent activity.  When fraudulent payment card use is suspected, MasterCard notifies affected issuers through a Security Alert while Visa notifies affected issuers via a "Compromised Account Management Systems Alert," or "CAMS Alert."  Upon information and belief, these alerts generally set forth the type of compromised data, the relevant timeframe of the compromise, and a list of payment card numbers that have been exposed.

---

[2]     Transactions made on the MasterCard Network are identical in all relevant respects.  On information and belief, the only difference is that in the MasterCard Network, the merchant initially seeks authorization/verification from its acquiring bank, which seeks reimbursement from the issuer.

15

27.     When a consumer makes a payment card purchase at a Home Depot retail store, Home Depot collects sensitive customer information, including the cardholder's name, account number, expiration date, CVV codes (security codes), and PIN numbers for debit cards (collectively, "track data") stored on the magnetic strip of the payment card swiped.  Home Depot stores this information in its point-of-sale system while electronically transmitting the information to third parties in the Visa and MasterCard Networks to process the transaction for payment.  On information and belief, Home Depot also collects and stores other consumer data, including mailing addresses, phone numbers, and email addresses.

28.     Track data is incredibly valuable on the black market because once in the hands of fraudsters, it can be used to create new payment cards and make fraudulent purchases at stores or over the internet.

**II.     Home Depot knew its internal computer network and point-of-sale system were not properly protected and/or PCI DSS compliant as early as 2009.**

29.     As set forth above, since at least 2009, Home Depot knew its data security policies, procedures and protocols were inadequate, yet did nothing to upgrade and improve such policies, procedures and protocols in the name of cost savings and avoiding the perceived disruption in business.  On information and belief, Home Depot also was not compliant with the Visa Operating Regulations,

16

MasterCard Rules, and/or the PCI DSS.

30.    The PCI DSS is the industry standard for large retail institutions that accept payment cards. The PCI DSS consists of twelve general standards, including: (i) installing and maintaining firewall(s) to protect data, (ii) protecting stored data, (iii) encrypting the transmission of payment cardholder data and sensitive information across public networks, (iv) using and regularly updating antivirus software, (v) developing and maintaining secure systems and applications, (vi) restricting physical access to cardholder data, (vii) tracking and monitoring all access to network resources and cardholder data, (viii) regularly testing security systems and processes, and (ix) maintaining a policy that addresses information security.

31.    The purpose of PCI DSS is to "[b]uild and maintain a secure network; protect cardholder data; ensure the maintenance of vulnerability management programs; implement strong access control measures; regularly monitor and test networks; and ensure the maintenance of information security policies." *See* www.pcisecuritystandards.org/documents/pci_dss_v2.pdf.

32.    Under PCI DSS, merchants like Home Depot are required to encrypt "track data." The Data Breach never should have happened. The fact that track

17

data was stolen and compromised shows they were being stored. Storing track data has long been banned by Visa, MasterCard, and the PCI Security Standards Council.

33.    The hackers could not have accessed Home Depot's internal computer network and point-of-sale system and stolen its customers' sensitive payment card information but for Home Depot's inadequate security protections—including its failure to comply with the Visa Operating Regulations, MasterCard Rules, and/or PCI DSS. Home Depot failed to implement and maintain appropriate customer data security policies, procedures, protocols, and hardware and software systems to safeguard and protect the nature and scope of the payment card information that was stolen and compromised.

## III.  The Home Depot Data Breach.

34.    On September 2, 2013, renowned data security watchdog and blogger Brian Krebs announced he had learned from confidential sources that Home Depot was the latest retailer hit by a data breach. He also reported that massive batches of stolen and compromised payment card track data traced back to customers who shopped at Home Depot were being sold on the online black market. According to reports, Home Depot began investigating the Data Breach.

18

35.     On September 8, 2014, Home Depot issued a press release confirming its electronic payment systems had been breached, and the Data Breach "could potentially impact    customers using payment cards at its U.S. and Canadian stores," from April 2014 and later.   Ten days later, Home Depot confirmed that approximately 56 million customers' payment cards were exposed in the Data Breach, leading some media outlets and data security experts to label it the largest retail data breach to date with the potential for fraudulent charges of up to $3 billion.

36.     Despite the prevalence of hackers exploiting lax security protocols at large retailers, The New York Times reported that former Home Depot employees have since revealed Home Depot "was slow to respond to early threats and only belatedly took action," and "[Home Depot] relied on outdated software to protect its network and scanned systems that handled customer information irregularly."

37.     The fact that data thieves were able to take the payment card information of millions of people who shopped at Home Depot over a period of several months shows that one of Home Depot's major failures was not properly monitoring its data security systems for breaches or unauthorized access to areas where sensitive should be segregated and securely stored.  PCI DSS requires companies to monitor all computer system components on at least a daily basis.

19

38. Home Depot also failed to properly encrypt its customers' sensitive payment card information in violation of the PCI DSS and industry standards. Strong encryption measures are necessary so that if such information is improperly accessed, the information would be indecipherable and unusable by data thieves for illegal purposes. The rapid availability of Home Depot's customers' *unencrypted* data on the black market confirms Home Depot was either not encrypting the data, or using substandard encryption techniques—or both.

## IV. The Home Depot Data Breach never should have happened.

39. The Home Depot Data Breach was preventable. Home Depot knew its data security policies, procedures, protocols, and hardware and software systems were insufficient, antiquated, and did not safeguard and protect sensitive consumer data from theft, yet did nothing to expand, improve and/or update them.

40. In addition to bringing its internal computer network and point-of-sale system into compliance with PCI DSS, the Data Breach would have been prevented had Home Depot instituted an effective Enterprise Risk Management ("ERM") system supported by the appropriate ERM software. With an effective ERM process, the risk of a data breach would have been documented and assessed in a way that would have provided transparency to Home Depot senior

management who, in turn, would have had the time and opportunity to take steps to prevent the Data Breach before it occurred. Even for an entity the size of Home Depot, a fully developed ERM system would have cost Home Depot a fraction of the estimated cost of the Home Depot Data Breach.[3] On information and belief, however, Home Depot failed and refused to develop and implement an effective ERM system—much less, an ERM system of any kind.

41. The Data Breach also would have been prevented had Home Depot installed the appropriate antivirus software in its point-of-sale system and across its entire internal network. Several readily available antivirus software programs— such as AVG, Bitdefender and ThreatTrack—would have detected and removed the malware used by the hackers. On information and belief, however, Home Depot failed and refused to install the appropriate antivirus software in its point-of-sale system and/or across its entire internal computer network.

42. The Data Breach also would have been prevented had Home Depot activated a key security feature in its data security software that would have

_____

[3] According to the Ponemon Institute, a data breach costs U.S. companies an average of $188 per compromised customer record—which pegs the total estimated cost of the Data Breach to Home Depot at over *$10.5 billion. See 2013 Cost of a Data Breach Study, United States*, PONEMON INSTITUTE, June 13, 2013.

identified and disabled the installation of malware such that its installation and utilization would have been impossible. On information and belief, however, Home Depot failed and refused to activated the security feature.

43.    The Data Breach also would have been prevented had Home Depot implemented basic security measures related to authentication; specifically, two-factor authentication on its point-of-sale terminals for anyone attempting to remotely connect to them. On information and belief, however, Home Depot failed and refused to implement these authentication-based basic security measures on its point-of-sale terminals.

44.    The Data Breach also would have been prevented had Home Depot properly monitored its point-of-sale system for signs of attack. On information and belief, however, Home Depot failed and refused to properly monitor its point-of-sale system.

45.    The Data Breach also would have been prevented had Home Depot disconnected its point-of-sale system from the Internet. There is no reason for point-of-sale terminals to be freely accessible via the Internet. At the very least, outbound access to the Internet by the point-of-sale system should have been blocked by a firewall, which would have prevented the stolen payment card

22

information from being uploaded to the Internet and transmitted to various international destinations.

46. The key to effective data security is layered security—which Home Depot did not have in place. Had layered data security been in place, the data thieves would have first had to determine how to deploy the malware, and then determine how to circumvent the antivirus software running on the point-of-sale terminals. Even if they could have accomplished these feats—which would not have been possible—the malware would have been blocked by the firewall or network segmentation when attempting to access the Internet. Had Home Depot taken even the most fundamental layered data security measures, the Data Breach never would have happened.

**V. Although Home Depot has accepted full responsibility for the Data Breach, it has not offered to compensate Plaintiffs and Class Members for their damages.**

47. Home Depot has repeatedly pledged that no consumer will sustain any damages as a result of the Data Breach, touting its one year of free identity repair assistance through AllClear ID. Affected U.S. customers may also enroll in the AllClear PRO service, which includes credit monitoring and an identity theft insurance policy. At best, however, credit monitoring is an indirect manner of

23

tracking identity theft—it may reveal new credit accounts opened with the stolen information, but does nothing to monitor unauthorized charges made to existing payment card accounts.

48.     While Home Depot has thrown consumers somewhat of a bone in an effort to rebuild customer loyalty and improve its financial outlook, Home Depot has not offered Plaintiffs and Class Members any compensation for the hard damages they have incurred (and will continue to incur) in the form, *inter alia*, expenses to cancel and reissue the stolen and compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards.

## HOME DEPOT'S PATTERN OF UNLAWFUL ACTIVITY UNDER THE FEDERAL RICO STATUTE AND GEORGIA RICO ACT:  INTERSTATE AND/OR FOREIGN WIRE FRAUD IN VIOLATION OF 18 U.S.C. § 1343 AND GA. CODE ANN. § 16-14-3(9)(A)(xxix)

49.     The preceding factual statements and allegations are incorporated by reference.

50.     Home Depot knew, and intentionally acted on such knowledge, that Plaintiffs and Class Members are part of the Visa and MasterCard Networks and would rely and, in fact, relied on merchants that accept Visa and MasterCard payment cards—such as Home Depot—to implement the appropriate customer data security policies, procedures, protocols, and hardware and software systems—

24

especially in point-of-sale systems.  Home Depot, however, intentionally devised, engaged in, condoned and/or ratified the above-described open-ended, unlawful and schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently, intentionally, and uniformly misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa and MasterCard Networks that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make

purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true. By doing so, Home Depot (i) directly and/or proximately caused Plaintiffs and Class Members to suffer damages to their businesses and/or property, (ii) saved the cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems, and (iii) wrongfully shifted the risk and expense of the Data Breach to Plaintiffs and Class Members. Home Depot intentionally engaged in these wrongful actions, inaction and/or omissions for its financial benefit and to Plaintiffs' and Class Members' financial detriment.

51.    Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions wrongfully cheated Plaintiffs and Class Members and violated all concepts of moral uprightness, fundamental honesty, fair play and right dealing in the general and business life of the members of society. Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions also unfairly betrayed the confidences Plaintiffs and Class Members placed in Home Depot. Home Depot's above-

described unlawful and intentional schemes, wrongful actions, inaction and/or omissions also were a consistent, regular and dominant part of the manner in which it participated in, and conducted its day-to-day business dealings with, Plaintiffs, Class Members and other members of the Visa and MasterCard Networks (the RICO enterprises).

52.    Home Depot intentionally devised, instigated, perpetrated, executed, condoned and/or ratified the above-described schemes by means of false or fraudulent pretenses, and engaged in the above-described repeated and systematic interstate and/or foreign wire fraud, by using and/or causing the use of the interstate and/or foreign wires to (i) secure the authorization of millions of payment card transactions from Plaintiffs and Class Members, each of which was a separate violation of 18 U.S.C. § 1343 (federal RICO) and GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343) (Georgia RICO), and (ii) post to and maintain its website and participate in the Visa and MasterCard Networks, each transaction of which also was a separate violation of 18 U.S.C. § 1343 (federal RICO) and GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343) (Georgia RICO).

53.    From at least 2009 (and possibly earlier), Home Depot used and/or caused the Visa and MasterCard Networks (the RICO enterprises) to use the

interstate and/or foreign wires in interstate and/or foreign commerce to devise, engage in, condone and/or ratify the above-described open-ended, unlawful and intentional schemes by means of false or fraudulent pretenses, representations and/or promises through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa and MasterCard Networks, without the knowledge or approval of Plaintiffs and Class Members, for the purposes of increasing Home Depot's revenue, profitability, and return on investment. The precise dates and substance of Home Depot's schemes and/or internal and external fraudulent communications, via the interstate and/or foreign wires, in furtherance of the above-described schemes, as well as their fraudulent communications to Plaintiffs and Class Members, via the interstate and/or foreign wires, in furtherance of their above-described schemes are in Home Depot's possession, custody, and control, and await discovery. By its unlawful actions, inaction and/or omissions, Home Depot (i) conducted or participated in the affairs of the Visa and MasterCard Networks (the RICO enterprises) (in violation of 18 U.S.C. § 1962(c)), (ii) conspired to violate 18 U.S.C. § 1962(a) and (c) (in violation of 18 U.S.C. § 1962(d)), (iii) conducted or participated in the affairs of the Visa and MasterCard Networks (the RICO enterprises) (in violation of GA.

28

CODE. ANN. § 16-14-4(b)), and/or (iv) conspired to violate GA. CODE. ANN. § 16-14-4(a) and (b) (in violation of GA. CODE. ANN. § 16-14-4(c))—thereby cheating and defrauding Plaintiffs and Class Members.

54.    Home Depot caused the Visa and MasterCard Networks (the RICO enterprises) to engage in the above-described open-ended, unlawful, intentional and fraudulent schemes—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of Plaintiffs and Class Members. Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute interstate and/or foreign wire fraud in violation of 18 U.S.C. § 1343 and GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343).

55.    Home Depot's above-described multiple, repeated and continuous acts of interstate and/or foreign wire fraud constitute a pattern of unlawful activity under the federal RICO statute and the Georgia RICO Act). Nothing in the nature of the above-described open-ended, unlawful, intentional and fraudulent schemes demonstrates that Home Depot's unlawful and intentional schemes, wrongful actions, inaction and/or omissions would ever have terminated but for this Court's intervention—as demonstrated by the fact that the Data Breach was first detected

and reported by Brian Krebs, a data security blogger, not Home Depot. Moreover, and independent of the duration of the schemes, Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were a consistent, regular and dominant part of its corporate culture and the manner in which it conducted and/or participated in the day-to-day business and financial affairs of the Visa Network and MasterCard Network (the RICO enterprises).

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action against Home Depot as a national class action, for themselves and all members of the following Class of similarly situated payment card issuers:

> All banks, credit unions, financial institutions and other entities that (i) issued Visa and/or MasterCard branded credit cards and/or debit cards that were stolen and compromised in the Home Depot Data Breach, (ii) cancelled and re-issued the compromised payment cards, and/or (iii) absorbed unauthorized charges made on the compromised payment cards.

57.     The proposed Class consists of hundreds, if not thousands, of geographically dispersed members, the joinder of which in one action is impracticable. The precise number and identities of the Class Members are currently unknown to Plaintiffs, but can easily be derived from the list of stolen

and compromised payment cards Home Depot has already compiled, and their issuers, which Home Depot, Visa and/or MasterCard have already notified.

58. Home Depot violated the rights of each Class Member in the same way by its above-described uniform unlawful and intentional schemes, wrongful actions, inaction and/or omissions.

59. There are questions of law and fact common to the proposed Class as a whole that predominate over any questions affecting individual Class Members including, *inter alia*:

(i) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions violated 18 U.S.C. § 1962(c) and/or (d);

(ii) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions violated GA. CODE. ANN. § 16-14-4(b) and/or (c);

(iii) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute negligent misrepresentation at common law;

(iv) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute negligence/gross negligence at common law;

(v) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute negligence *per se* at common law;

(vi) whether Home Depot's above-described unlawful and intentional

31

schemes, wrongful actions, inaction and/or omissions constitute breach of implied contract at common law;

(vii) whether Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute breach of a contract to which Plaintiffs and Class Members are third-party beneficiaries at common law;

(viii) whether Home Depot should be compelled to refund (or disgorge) the amounts by which it has been unjustly enriched and/or compelled to make restitution under the common law equitable doctrine of assumpsit;

(ix) whether Home Depot's above-described wrongful unlawful and intentional schemes, wrongful actions, inaction and/or omissions directly and/or proximately caused Plaintiffs and Class Members to suffer damages;

(x) whether Plaintiffs and Class Members are entitled to recover actual damages, consequential damages, incidental damages, statutory damages, punitive damages, RICO treble damages, pre- and post-judgment interest, attorneys' fees, litigation expenses and/or court costs and, if so, the amount of the recovery; and

(xi) whether Plaintiffs and Class Members are entitled to injunctive relief.

60.     Plaintiffs' claims are typical of Class Members' claims because Plaintiffs and Class Members are all victims of Home Depot's above-described schemes to cheat and defraud them by means of false or fraudulent pretenses, representations, or promises.

61.     Plaintiffs and their counsel will fairly and adequately represent the interests of Class Members. Plaintiffs have no interests antagonistic to, or in

conflict with, any of the Class Members' interests. Plaintiffs' counsel are highly experienced in leading and prosecuting class actions and complex commercial litigation, including data breach, financial institution and RICO class actions.

62.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and Class Members' claims. Plaintiffs and Class Members have been (and will continue to be) harmed as a direct and/or proximate result of Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions. Litigating this case as a class action is appropriate because (i) it will avoid a multiplicity of suits and the corresponding burden on the courts and Parties, (ii) it would be virtually impossible for all Class Members to intervene as parties-plaintiff in this action, (iii) it will allow numerous entities with claims too small to adjudicate on an individual basis because of prohibitive litigation costs to obtain redress for their injuries, and (iv) it will provide court oversight of the claims process once Home Depot's liability is adjudicated.

63.     Class Members are readily ascertainable since they have all been notified that certain payment cards issued by them were compromised by the Data Breach, whereupon they cancelled and re-issued such compromised payment cards and/or absorbed fraudulent charges made to the compromised payment cards.

64.    Certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(3) because the above-described common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.    Certification also is appropriate under FED. R. CIV. P. 23(b)(2) because Home Depot has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or equitable relief with respect to the Class as a whole.

66.    Certification also is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Home Depot.  For example, one court might decide that the challenged actions are illegal and enjoin Home Depot, while another court might decide that the same actions are not illegal.  Individual actions also could be dispositive of the interests of the other Class Members who were not parties to such actions and substantially impair or impede their ability to protect their interests.

67.    Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions are applicable to the Class as a whole, for which Plaintiffs seek, *inter alia*, damages and equitable remedies.

68.     Absent a class action, Home Depot will retain the benefits of its wrongdoing despite seriously violating the law and inflicting substantial harm on Plaintiffs' and Class Members' businesses and property.

## CLAIMS FOR RELIEF/ CAUSES OF ACTION

## COUNT I

## VIOLATION OF 18 U.S.C. § 1962(c)

69.     The preceding factual statements and allegations are incorporated by reference.

70.     Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

71.     Home Depot is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

72.     The Visa Network and MasterCard Network are "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, were engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

73.     Home Depot conducted and/or participated in the business and financial affairs of the Visa and MasterCard Networks (the RICO enterprises) through a pattern of unlawful activity within the meaning of 18 U.S.C. §§

1961(1)(B), 1961(5), 1962(c)—to wit, the above-described multiple, repeated, and continuous acts of interstate and/or foreign wire fraud in violation of 18 U.S.C. §§ 2 and 1343.

74. Home Depot's pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(c) directly and/or proximately caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) by Home Depot engaging in the above-described repeated and systematic interstate and/or foreign wire fraud, in violation of 18 U.S.C. § 1343, to devise, engage in, condone and/or ratify the above-described open-ended, unlawful and intentional schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses, and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or

MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true. By doing so, Home Depot (i) directly and/or proximately caused Plaintiffs and Class Members to suffer damages to their businesses and/or property, (ii) saved the cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems, and (iii) wrongfully shifted the risk and expense of the Data Breach to Plaintiffs and Class Members.

37

75.    Plaintiffs and Class Members also were damaged (and will continue to be damaged) by the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the fraudulent charges made on the compromised payment cards they absorbed.  Home Depot intentionally caused the Visa and MasterCard Networks (the RICO enterprises) to engage in multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of Plaintiffs and Class Members.

76.    Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer damages in the form of, *inter alia*, the expenses to cancel and reissue compromised payment cards, the absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business opportunities.   All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Home

Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT II

### VIOLATION OF 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(a)

77.     The preceding factual statements and allegations are incorporated by reference.

78.     Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

79.     Home Depot is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

80.     The Visa Network and MasterCard Network are "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, were engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

81.     On information and belief, Home Depot conspired with other persons and/or entities, the identities of whom are known only to Home Depot at this time, within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(a); that is, Home Depot and its co-conspirators conspired to receive income derived, directly

39

or indirectly, from a pattern of unlawful activity in which Home Depot and its co-conspirators participated as principals within the meaning of 18 U.S.C. §§ 1961(1)(B), 1961(5), and 1962(a)—to wit, the above-described open-ended, unlawful and fraudulent schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose

40

of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true. Home Depot and its co-conspirators intentionally participated in a conspiracy to engage in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions for Home Depot's financial benefit and to Plaintiffs' and Class Members' financial detriment in violation of 18 U.S.C. §§ 2 and 1343. The members, time and place of this complex, multi-party conspiracy are known only by Home Depot at this time and await discovery.

82. Home Depot used or invested (and continues to use or invest), directly or indirectly, such income, or the proceeds of such income, in its ongoing participation in the Visa and MasterCard Networks (the RICO enterprises) and/or the creation and/or operation of one or more other Home Depot-owned stand-alone enterprises including, without limitation, its international operations in Canada, Mexico, Puerto Rico, the U.S. Virgin Islands, and Guam. All of these stand-alone Home Depot-owned enterprises are engaged in, or the activities of which affect,

41

interstate and/or foreign commerce.

83. The pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(d) engaged in by Home Depot and its co-conspirators directly and/or proximately caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) in their businesses and/or property in the form of, *inter alia*, expenses to cancel and reissue the stolen and compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards by means of false or fraudulent pretenses, representations, or promises by engaging in the above-described repeated and systematic interstate and/or foreign wire fraud by using and/or causing the use of the interstate and/or foreign wires to (i) secure the authorization of millions of payment card transactions from Plaintiffs and Class Members via the interstate and/or foreign wires, each of which was a separate violation of 18 U.S.C. § 1343, and (ii) post to and maintain its website and participate in the Visa and MasterCard Networks, each transaction of which also was a separate violation of 18 U.S.C. § 1343. Plaintiffs and Class Members also were damaged (and will continue to be damaged) by the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the

42

fraudulent charges made on the compromised payment cards they absorbed.

84.     Home Depot and its co-conspirators caused the Visa and MasterCard Networks (the RICO enterprises) to engage in the above-described multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of Plaintiffs and Class Members.

85.     Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer the above-described damages.   All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Home Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT III

### VIOLATION OF 18 U.S.C. § 1962(d) BY
### CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)

86.     The preceding factual statements and allegations are incorporated by reference.

87.     Each Plaintiff and each Class Member is a "person" within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

88.     Home Depot is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

89.     The Visa Network and MasterCard Network are "enterprises" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and, at all relevant times, were engaged in, and the activities of which affected, interstate and/or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), 1962(d).

90.     On information and belief, Home Depot conspired with other persons and/or entities, the identities of whom are known only to Home Depot at this time, within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c); that is, Home Depot and its co-conspirators conspired to conduct and/or participate in the business and financial affairs of the Visa and MasterCard Networks (the RICO enterprises) through a pattern of unlawful activity within the meaning of 18 U.S.C.

44

§§ 1961(1)(B), 1961(5), and 1962(c)—to wit, the above-described open-ended, unlawful and fraudulent schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data— including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases

45

made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members the reverse was true. Home Depot and its co-conspirators intentionally participated in a conspiracy to engage in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions for Home Depot's financial benefit and Plaintiffs' and Class Members' financial detriment in violation of 18 U.S.C. §§ 2 and 1343. The members, time and place of this complex, multi-party conspiracy are known only by Home Depot and await discovery.

91. The pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(d) engaged in by Home Depot and its co-conspirators directly and/or proximately caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of 18 U.S.C. § 1964(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) in their businesses and/or property in the form of, *inter alia*, expenses to cancel and reissue the stolen and compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards by means of false or fraudulent pretenses, representations, or promises by engaging in the above-described

46

repeated and systematic interstate and/or foreign wire fraud by using and/or causing the use of the interstate and/or foreign wires to (i) secure the authorization of millions of payment card transactions from Plaintiffs and Class Members via the interstate and/or foreign wires, each of which was a separate violation of 18 U.S.C. § 1343, and (ii) post to and maintain its website and participate in the Visa and MasterCard Networks, each transaction of which also was a separate violation of 18 U.S.C. § 1343. Plaintiffs and Class Members also were damaged (and will continue to be damaged) by the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the fraudulent charges made on the compromised payment cards Plaintiffs and Class Members absorbed.

92. Home Depot and its co-conspirators caused the Visa and MasterCard Networks (the RICO enterprises) to engage in the above-described multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of

Plaintiffs and Class Members.

93.    Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer the above-described damages.    All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Home Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT IV

## VIOLATION OF GA. CODE ANN. § 16-14-4(b)

94.    The preceding factual statements and allegations are incorporated by reference.

95.    Each Plaintiff and each Class Member is a "person" within the meaning of the Georgia RICO Act.

96.    Home Depot is a "person" within the meaning of the Georgia RICO Act.

97.    The Visa Network and MasterCard Network are "enterprises" within the meaning of GA. CODE. ANN. § 16-14-3(6).

98.    Home Depot conducted and/or participated in the business and financial affairs of the Visa and MasterCard Networks (the RICO enterprises)

48

through a pattern of unlawful activity within the meaning of GA. CODE. ANN. § 16-14-4(b)—to wit, the above-described multiple, repeated, and continuous acts of interstate and/or foreign wire fraud in violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343).

99. Home Depot's pattern of unlawful activity and corresponding violations of GA. CODE. ANN. § 16-14-4(b) directly and/or proximately caused Plaintiffs and Class Members to suffer injury within the meaning of GA. CODE. ANN. § 16-14-6(c)—to wit, Plaintiffs and Class Members were injured (and will continue to be injured) by Home Depot engaging in the above-described repeated and systematic interstate and/or foreign wire fraud, in violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343), to devise, engage in, condone and/or ratify the above-described open-ended, unlawful and intentional schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses, and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa

49

Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true. By doing so, Home Depot (i) directly and/or proximately caused Plaintiffs and Class Members to suffer injury in the form of damages to their businesses and/or property, (ii) saved the cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems, and (iii) wrongfully shifted the risk and

expense of the Data Breach to Plaintiffs and Class Members.

100.   Plaintiffs and Class Members also were (and will continue to be) injured in the form of the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the fraudulent charges made on the compromised payment cards they absorbed.   Home Depot intentionally caused the Visa and MasterCard Networks (the RICO enterprises) to engage in multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial injury of Plaintiffs and Class Members.

101.   Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer injury and damages in the form of, *inter alia*, the expenses to cancel and reissue compromised payment cards, the absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business opportunities.

All of Plaintiffs' and Class Members' injuries and damages were reasonably foreseeable by Home Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT V

### VIOLATION OF GA. CODE ANN. § 16-14-4(c) BY CONSPIRING TO VIOLATE GA. CODE ANN. § 16-14-4(a)

102.    The preceding factual statements and allegations are incorporated by reference.

103.    Each Plaintiff and each Class Member is a "person" within the meaning of the Georgia RICO Act.

104.    Home Depot is a "person" within the meaning of the Georgia RICO Act.

105.    The Visa Network and MasterCard Network are "enterprises" within the meaning of GA. CODE. ANN. § 16-14-3(6).

106.    On information and belief, Home Depot conspired with other persons and/or entities, the identities of whom are known only to Home Depot at this time, within the meaning of GA. CODE. ANN. § 16-14-4(c) to violate GA. CODE. ANN. § 16-14-4(a); that is, Home Depot and its co-conspirators conspired to receive income derived, directly or indirectly, from a pattern of unlawful activity in which

Home Depot and its co-conspirators participated as principals within the meaning of GA. CODE. ANN. § 16-14-4(a) and the Georgia RICO Act—to wit, the above-described open-ended, unlawful and fraudulent schemes to (i) defraud and cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing

Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing Home Depot's revenue, profitability, and return on investment. Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true. Home Depot and its co-conspirators intentionally participated in a conspiracy to engage in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions for Home Depot's financial benefit and to Plaintiffs' and Class Members' financial injury in violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343) and the Georgia RICO Act. The members, time and place of this complex, multi-party conspiracy are known only by Home Depot at this time and await discovery.

107. Home Depot used or invested (and continues to use or invest), directly or indirectly, such income, or the proceeds of such income, in its ongoing participation in the Visa and MasterCard Networks (the RICO enterprises) and/or the creation and/or operation of one or more other Home Depot-owned stand-alone enterprises including, without limitation, its international operations in Canada, Mexico, Puerto Rico, the U.S. Virgin Islands, and Guam. All of these stand-alone

Home Depot-owned enterprises are engaged in, or the activities of which affect, interstate and/or foreign commerce.

108. The pattern of unlawful activity and corresponding violations of 18 U.S.C. § GA. CODE. ANN. § 16-14-4(c) engaged in by Home Depot and its co-conspirators directly and/or proximately caused Plaintiffs and Class Members to suffer injury to their businesses and/or property within the meaning of GA. CODE. ANN. § 16-14-6(c)—to wit, Plaintiffs and Class Members were (and will continue to be) injured in their businesses and/or property in the form of, *inter alia*, expenses to cancel and reissue the stolen and compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards by means of false or fraudulent pretenses, representations, or promises by engaging in the above-described repeated and systematic interstate and/or foreign wire fraud by using and/or causing the use of the interstate and/or foreign wires to (i) secure the authorization of millions of payment card transactions from Plaintiffs and Class Members via the interstate and/or foreign wires, each of which was a separate violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343), and (ii) post to and maintain its website and participate in the Visa and MasterCard Networks, each transaction of which also was a separate violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. §

1343). Plaintiffs and Class Members also were (and will continue to be) injured in the form of the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the fraudulent charges made on the compromised payment cards they absorbed.

109. Home Depot and its co-conspirators caused the Visa and MasterCard Networks (the RICO enterprises) to engage in the above-described multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of Plaintiffs and Class Members.

110. Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer the above-described injuries and damages. All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Home Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT VI

## VIOLATION OF GA. CODE ANN. § 16-14-4(c) BY
## CONSPIRING TO VIOLATE GA. CODE ANN. § 16-14-4(b)

111.    The preceding factual statements and allegations are incorporated by reference.

112.    Each Plaintiff and each Class Member is a "person" within the meaning of the Georgia RICO Act.

113.    Home Depot is a "person" within the meaning of the Georgia RICO Act.

114.    The Visa Network and MasterCard Network are "enterprises" within the meaning of GA. CODE. ANN. § 16-14-3(6).

115.    On information and belief, Home Depot conspired with other persons and/or entities, the identities of whom are known only to Home Depot at this time, within the meaning of GA. CODE. ANN. § 16-14-4(c) to violate GA. CODE. ANN. § 16-14-4(b); that is, Home Depot and its co-conspirators conspired to conduct and/or participate in the business and financial affairs of the Visa and MasterCard Networks (the RICO enterprises) through a pattern of unlawful activity within the meaning of GA. CODE. ANN. § 16-14-4(b) and the Georgia RICO Act—to wit, the above-described open-ended, unlawful and fraudulent schemes to (i) defraud and

cheat Plaintiffs and Class Members to obtain money, funds, credits, assets, and/or other property owned by, or under the custody or control of, Plaintiffs and Class Members by means of false or fraudulent pretenses and/or (ii) fraudulently and intentionally misrepresent to Plaintiffs and Class Members—explicitly and/or implicitly—through millions of payment card purchases for which it sought authorization from Plaintiffs and Class Members via the interstate and/or foreign wires, its website, and its participation in the Visa Network and MasterCard Network that (a) it was in compliance with the Visa Operating Regulations and/or MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, PIN numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (b) it was in compliance with the PCI DSS, and (c) its customer data security policies, procedures, protocols, and hardware and software systems were in place, up to date, and effective, and would safeguard and protect sensitive customer data—including the stolen and compromised payment card information—for the purpose of inducing Plaintiffs and Class Members to issue payment cards used to make purchases at Home Depot and/or approve millions of payment card purchases made at Home Depot via the interstate and/or foreign wires for the further purpose of increasing

Home Depot's revenue, profitability, and return on investment.   Alternatively, Home Depot fraudulently and intentionally failed to disclose to Plaintiffs and Class Members that the reverse was true.   Home Depot and its co-conspirators intentionally participated in a conspiracy to engage in the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions for Home Depot's financial benefit and to Plaintiffs' and Class Members' financial injury in violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343).   The members, time and place of this complex, multi-party conspiracy are known only by Home Depot at this time and await discovery.

116.   The pattern of unlawful activity and corresponding violations of GA. CODE. ANN. § 16-14-4(c) engaged in by Home Depot and its co-conspirators directly and/or proximately caused Plaintiffs and Class Members to suffer injury within the meaning of GA. CODE. ANN. § 16-14-6(c)—to wit, Plaintiffs and Class Members were damaged (and will continue to be damaged) in their businesses and/or property in the form of, *inter alia*, expenses to cancel and reissue the stolen and compromised payment cards and the absorption of fraudulent charges made on the compromised payment cards by means of false or fraudulent pretenses, representations, or promises by engaging in the above-described repeated and systematic interstate and/or foreign wire fraud by using and/or causing the use of

the interstate and/or foreign wires to (i) secure the authorization of millions of payment card transactions from Plaintiffs and Class Members via the interstate and/or foreign wires, each of which was a separate violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343), and (ii) post to and maintain its website and participate in the Visa and MasterCard Networks, each transaction of which also was a separate violation of GA. CODE. ANN. § 16-14-3(9)(A)(xxix) (by virtue of violating 18 U.S.C. § 1343).  Plaintiffs and Class Members also were (and will continue to be) injured in the form of the earnings and profits they would have earned on the funds used to cancel and reissue the compromised payment cards and/or the fraudulent charges made on the compromised payment cards Plaintiffs and Class Members absorbed.

117.  Home Depot and its co-conspirators caused the Visa and MasterCard Networks (the RICO enterprises) to engage in the above-described multiple predicate acts of interstate and/or foreign wire fraud to, in turn, engage in the above-described open-ended, unlawful, intentional and fraudulent schemes and commit the above-described substantive RICO offenses by means of false or fraudulent pretenses, representations, or promises—without Plaintiffs' and Class Members' knowledge or approval—for the purpose of increasing Home Depot's revenue, profitability, and return on investment to the financial detriment of

Plaintiffs and Class Members.

118.   Home Depot knew its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions were fraudulent, misleading and illegal, and would cause Plaintiffs and Class Members to suffer the above-described injuries and damages.   All of Plaintiffs' and Class Members' damages were reasonably foreseeable by Home Depot and/or anticipated as a substantial factor and a natural consequence of its pattern of unlawful activity.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

119.   The preceding factual statements and allegations are incorporated by reference.

120.   By its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Home Depot negligently failed to disclose to Plaintiffs and Class Members the material and important facts that (i) it was not in compliance with the Visa Operating Regulations and MasterCard Rules mandating the protection of payment card information and prohibiting the retention or storage of payment card account numbers, personal information, magnetic stripe information, and/or transaction information subsequent to the approval of the transaction, (ii) it was not in compliance with the PCI DSS, and (iii) its customer

data security policies, procedures, protocols, and hardware and software systems would not safeguard and protect sensitive customer data—including the payment card information stolen and compromised in the Home Depot Data Breach. Home Depot's material omissions were made in the course of Home Depot's business for the guidance of Plaintiffs and Class Members in their business transactions with Home Depot, including issuing payment cards used to make purchases at Home Depot and/or approving millions of payment card purchases made at Home Depot via the interstate and/or foreign wires. As set forth above, Home Depot also negligently made incorrect statements concerning its customer data security policies, procedures, protocols, and hardware and software systems, falsely communicating material facts.

121. Home Depot knew that Plaintiffs and Class Members are part of the Visa and MasterCard Networks and rely on merchants that accept Visa and MasterCard payment cards to implement the appropriate customer data security policies, procedures, protocols, and hardware and software systems—especially in their point-of-sale systems.

122. Home Depot failed to exercise reasonable care or competence in withholding this information the truth from Plaintiffs and Class Members; to wit, the material and important fact that its customer data security policies, procedures,

protocols, and hardware and software systems, in fact, did not safeguard and protect sensitive customer data—including the payment card information stolen and compromised in the Home Depot Data Breach.

123.   Plaintiffs and Class Members justifiably relied on Home Depot's silence and incorrect statements, when Home Depot had a duty to speak, which directly and/or proximately caused Plaintiffs and Class Members to suffer injury to their businesses and/or property including, *inter alia*, the expenses to cancel and reissue compromised payment cards, the absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business opportunities.   Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions constitute negligent misrepresentation at common law.

## COUNT VIII

## NEGLIGENCE/GROSS NEGLIGENCE

124.   The preceding factual statements and allegations are incorporated by reference.

125.   Upon coming into possession of the private, non-public, sensitive payment card information of Plaintiffs' and Class Members' customers, Home Depot had (and continues to have) a duty to exercise reasonable care in

safeguarding and protecting the payment card information from being stolen and/or compromised. Home Depot's duty arises from the common law, in part, because it was reasonably foreseeable to Home Depot under the circumstances that a data breach in its point-of-sale system was likely to occur that would cause Plaintiffs' and Class Members' above-described damages, as well as from the duties expressly imposed upon Home Depot from other sources, such as compliance with industry standards (*i.e.*, PCI DSS), implied contracts between Home Depot and Plaintiffs and Class Members, contracts between Home Depot and other third parties (such as its acquiring bank), and participation in the Visa and MasterCard Networks (and the corresponding Visa Operating Regulations and MasterCard Rules).

126.   Home Depot also had a duty to timely disclose to Plaintiffs, Class Members, and their customers that the Data Breach had occurred and the private, non-public, sensitive payment card information of Plaintiffs' and Class Members' customers had been stolen and compromised—at least so that Plaintiffs, Class Members, and their customers could take the appropriate steps necessary to minimize their damages. Instead, by its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, and delayed disclosure of the Data Breach, Home Depot shifted its notification obligation and expenses to

Plaintiffs and Class Members. Home Depot also (i) directly and/or proximately caused Plaintiffs and Class Members to suffer the above-described damages to their businesses and/or property, (ii) saved the cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems, and (iii) wrongfully shifted the risk and expense of the Data Breach to Plaintiffs and Class Members. Home Depot's duty to properly and timely disclose the Data Breach to Plaintiffs, Class Members, and their customers also arises from the same above-described sources.

127.    Home Depot also had a duty to implement the appropriate customer data security policies, procedures, protocols, and hardware and software systems—especially in its point-of-sale systems—to prevent and detect data breaches and the unauthorized dissemination of Plaintiffs' and Class Members' customers' private, non-public, sensitive financial information—including the payment card information stolen and compromised by the Home Depot Data Breach. Such duty also arises from the same above-described sources. Home Depot, by and through its above-described negligent and/or grossly negligent actions, inaction, omissions and/or silence when it had a duty to speak, unlawfully breached its duties to Plaintiffs and Class Members by, *inter alia*, failing to implement the appropriate customer data security policies, procedures, protocols, and hardware and software

systems—especially in its point-of-sale system—granting at least one outside vendor access to its internal computer network of systems through which the malware was placed inside Home Depot's point-of-sale system, and failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' customers' private, non-public, sensitive payment card information and PII that was within Home Depot's possession, custody and control.

128. Home Depot, by and through its above-described negligent and/or grossly negligent actions, inaction, omissions and/or silence when it had a duty to speak, unlawfully also breached its duties to Plaintiffs, Class Members and their customers to properly and timely notify them of the Data Breach so they could take the necessary steps to minimize their damages. But for Home Depot's grossly negligent, negligent and/or wrongful breach of the duties it owed (and continues to owe) Plaintiffs and Class Members, their customers' private, non-public, sensitive payment card information never would have been stolen and compromised, the Data Breach would not have occurred, and Plaintiffs and Class Members would not have incurred damages notifying their customers about the Home Depot Data Breach, canceling and reissuing the compromised payment cards, and/or absorbing unauthorized charges made on the compromised payment cards.

129.     The Home Depot Data Breach and the above-described substantial injuries suffered by Plaintiffs and Class Members as a direct and/or proximate result of the Data Breach were reasonably foreseeable consequences of Home Depot's negligence and/or gross negligence.

130.     The economic loss doctrine does not apply to bar Plaintiffs' and Class Members' negligence and/or gross negligence claims because, *inter alia*, (i) Home Depot is in the business of supplying information to guide Plaintiffs and Class Members regarding its business transactions (*i.e.*, its electronic payment card transactions for which Home Depot regularly seeks their authorization via the interstate and/or foreign wires to consummate), (ii) Home Depot made the above-described negligent and/or grossly negligent misrepresentations, and/or engaged in the above-described negligent and/or grossly negligent conduct, and (iii) Plaintiffs and Class Members are not in direct privity of contract with Home Depot.

## COUNT IX

## NEGLIGENCE *PER SE*

131.     The preceding factual statements and allegations are incorporated by reference.

132.     At all relevant times, Home Depot was required (and continues to be required) to comply with, *inter alia*, the applicable industry standards requiring

67

Home Depot to implement the appropriate customer data security policies, procedures, protocols, and hardware and software systems—especially in its point-of-sale system—but failed to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' customers' sensitive payment card information within Home Depot's possession, custody and control. These standards include, without limitation, the PCI DSS, Visa Operating Regulations and MasterCard Rules—which establish the minimal duty of care owed by Home Depot to Plaintiffs and Class Members.

133. By its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Home Depot knowingly failed to comply with PCI DSS as evidenced, for example, by the theft and compromise of the payment card track data, which would not have been stolen had Home Depot not stored such data in its point-of-sale system in violation of PCI DSS. On information and belief, Home Depot's point-of-sale system did not comply with PCI DSS in other ways that await discovery. Had Home Depot been in PCI DSS compliance during the relevant time period, the Data Breach would not have occurred.

134. On information and belief, by its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Home Depot also knowingly failed to comply with the Visa Operating Regulations and

MasterCard Rules, the details of which await discovery and will most likely result in fines and other sanctions imposed by Visa and MasterCard.

135. Home Depot's violations of the PCI DSS, Visa Operating Regulations and/or MasterCard Rules (and failure to implement the other above-described basic data security measures in its point-of-sale system and/or internal computer network) constitute negligence *per se* that directly and/or proximately caused Plaintiffs and Class Members to suffer the above-described substantial injuries. Plaintiffs and Class Members are members of the class of persons intended to be protected by the PCI DSS, Visa Operating Regulations, MasterCard Rules and other industry data security standards. The injuries suffered by Plaintiffs and Class Members—to wit, *inter alia*, expenses to cancel and reissue the compromised payment cards and/or absorption of unauthorized charges made on the compromised payment cards—were of the type intended to be prevented by these regulations and industry security standards.

## COUNT X

## __BREACH OF IMPLIED CONTRACT__

136. The preceding factual statements and allegations are incorporated by reference.

137. Plaintiffs' and Class Members' customers were required to provide

Home Depot with their private, non-public, sensitive payment card information in order for Home Depot to facilitate their payment card transactions.   Implicit in this requirement was a covenant requiring Home Depot to, *inter alia*, take reasonable efforts to safeguard and protect the payment card information and promptly notify Plaintiffs, Class Members, and their customers in the event their payment card information was stolen and compromised.   This covenant also ran (and continues to run) to Plaintiffs and Class Members.

138.   Similarly,   by   repeatedly   and   systematically   requesting   the authorization of millions of payment card transactions via the interstate and/or foreign wires, Home Depot impliedly promised Plaintiffs and Class Members that its customer data security policies, procedures, protocols, and hardware and software systems—especially in its point-of-sale system—safeguarded and protected Plaintiffs' and Class Members' customers' private, non-public, sensitive payment card information from unauthorized dissemination.

139.   Notwithstanding the above-described implied contractual obligations, Home Depot knowingly failed to safeguard and protect Plaintiffs' and Class Members' customers' private, non-public, sensitive payment card information.  To the contrary, Home Depot provided a gateway for the unauthorized dissemination of this information to fraudsters and other unauthorized third parties worldwide.

70

Home Depot's above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions breached its implied contracts with Plaintiffs and Class Members which, in turn, directly and/or proximately caused Plaintiffs and Class Members to suffer the above-described substantial financial injuries.

## COUNT XI

### BREACH OF CONTRACTS TO WHICH PLAINTIFFS AND CLASS MEMBERS ARE THIRD-PARTY BENEFICIARIES

140. The preceding factual statements and allegations are incorporated by reference.

141. At all relevant times, Home Depot was (and, on information and belief, continues to be) in contractual relationships pertaining to its compromised point-of-sale system with its acquiring bank for payment card transactions, its payment card transaction processor, its network and point-of-sale system outside consultants, and hardware and/or software vendors—the identities of which are known only to Home Depot at this time. Upon information and belief, Plaintiffs and Class Members are intended third-party beneficiaries of these contracts.

142. Upon information and belief, these contracts explicitly or implicitly require Home Depot to implement customer data security policies, procedures, protocols, and hardware and software systems—especially in its point-of-sale

system—to safeguard and protect Plaintiffs' and Class Members' customers' private, non-public, sensitive payment card information from unauthorized dissemination.

143. Plaintiffs and Class Members are intended third-party beneficiaries of these contracts. Under the circumstances, recognition of a right to performance by Plaintiffs and Class Members is appropriate to effectuate the intentions of the parties to these contracts. One or more of the parties to these contracts intended to give Plaintiffs and Class Members the benefit of the performance promised in the contracts.

144. By its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Home Depot breached one or more of these contracts by, *inter alia*, failing to safeguard and protect Plaintiffs' and Class Members' customers' private, non-public, sensitive payment card information that was stolen and compromised in the Home Depot Data Breach, which directly and/or proximately caused Plaintiffs and Class Members to suffer the above-described substantial damages. By its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions, Home Depot saved (or avoided spending) a substantial sum of money by knowingly failing to comply with its contractual obligations the PCI DSS, the Visa Operating Regulations and

the MasterCard Rules—and continues to do so.

## COUNT XII

## UNJUST ENRICHMENT/ASSUMPSIT

145.   The preceding factual statements and allegations are incorporated by reference.

146.    Plaintiffs plead this Count in the alternative to its breach of contract claims (Counts X and XI) because Plaintiffs and Class Members cannot recover under this Count and under Count X and/or Count XI.

147.   Home Depot (and possibly others, the identities of whom are known only to Home Depot at this time) have been (and continue to be) unjustly enriched by, *inter alia*, (i) the revenue from payment card transactions made on the stolen and compromised payment cards during the time of the Data Breach, (ii) the saved cost of implementing the proper customer data security policies, procedures, protocols, and hardware and software systems in its computer systems and point-of-sale system, (iii) the shifted the risk and expense of the Data Breach to Plaintiffs and Class Members, (iv) using and/or investing the fraudulently obtained revenue and profits from the payment card transactions described in (i) to participate in, create and/or operate various enterprises including, *inter alia*, the Visa Network, MasterCard Network, and its wholly-owned, stand-alone enterprises including,

73

without limitation, its international operations in Canada, Mexico, Puerto Rico, the U.S. Virgin Islands, and Guam, and (v) the return on investment on the amounts described in (i)-(iv) (above).

148.    Home Depot, therefore, should be compelled to refund (or disgorge) such wrongfully collected and/or saved back funds under the common law equitable doctrine of unjust enrichment and/or the duty to make restitution under the common law equitable doctrine of assumpsit.

## RELIEF REQUESTED

149.    The preceding factual statements and allegations are incorporated by reference.

150.    ACTUAL, CONSEQUENTIAL, AND/OR INCIDENTAL DAMAGES.  As a direct and/or proximate result of the above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions engaged in by Home Depot (and/or its co-conspirators), Plaintiffs and Class Members have sustained (and will continue to sustain) actual, consequential, incidental, and/or statutory damages in the form of, *inter alia*, expenses to cancel and reissue compromised payment cards, expenses to notify payment cardholders affected by the Home Depot Data Breach, the absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business opportunities—for which

Plaintiffs and Class Members are entitled to compensation. Alternatively, Plaintiffs and Class Members are entitled to restitution and/or disgorgement of Home Depot's gross revenue from payment card transactions made on the stolen and compromised payment cards generated during the time of the Home Depot Data Breach and all other amounts by which Home Depot (and its co-conspirators) have been unjustly enriched. All of the damages sustained by Plaintiffs and Class Members were reasonably foreseeable by Home Depot. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed and/or occurred.

151. **PUNITIVE DAMAGES.** The above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions engaged in by Home Depot (and/or its co-conspirators) were committed intentionally, willfully, wantonly and/or with reckless disregard for Plaintiffs' and Class Members' rights and interests. Accordingly, Plaintiffs and Class Members are entitled to punitive damages from Home Depot (and/or its co-conspirators) as punishment and to discourage such wrongful conduct in the future. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed or occurred.

152. **RICO TREBLE DAMAGES.** Plaintiffs and Class Members also are entitled to automatic treble damages for the above-described unlawful and

intentional schemes, wrongful actions, inaction and/or omissions engaged in by Home Depot (and/or its co-conspirators) in violation of 18 U.S.C. § 1964(c) (federal RICO) and GA. CODE. ANN. § 16-14-6(c) (Georgia RICO).

153. **INJUNCTIVE RELIEF.** The above-described repetitious and systematic interstate and/or foreign wire fraud in violation of 18 U.S.C. § 1343 engaged in by Home Depot (and/or its co-conspirators) has caused (and will continue to cause) Plaintiffs and Class Members to suffer irreparable harm in the form of, *inter alia*, expenses to cancel and reissue compromised payment cards, the absorption of fraudulent charges made on the compromised payment cards, business destruction, lost profits and/or lost business opportunities. Such irreparable harm will not cease unless and until enjoined by this Court. Plaintiffs and Class Members, therefore, are entitled to a temporary injunction, permanent injunction and/or other appropriate affirmative relief including, *inter alia*, (i) restitution and/or disgorgement of Home Depot's gross revenue from payment card transactions made on the stolen and compromised payment cards during the time of the Home Depot Data Breach and all other amounts by which Home Depot (and/or its co-conspirators) have been unjustly enriched, (ii) an order compelling Home Depot to implement the proper customer data protection policies, procedures, protocols, hardware and/or software systems, and/or (iii) an order compelling Home Depot

(and/or its co-conspirators) to discontinue its above-described unlawful and intentional schemes, wrongful actions, inaction and/or omissions. All conditions precedent to Plaintiffs' and Class Members' claims for relief have been performed and/or occurred.

154. **ATTORNEYS' FEES, LITIGATION EXPENSES AND COURT COSTS.** Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses, and court costs under, *inter alia*, 18 U.S.C. § 1964(c) (federal RICO) and GA. CODE. ANN. § 16-14-6(c) (Georgia RICO). All conditions precedent to Plaintiffs' and Class Members' claims for attorneys' fees, litigation expenses and court costs have been performed and/or occurred.

## PRAYER

**WHEREFORE,** Plaintiffs, for themselves and Class Members, respectfully request that (i) Home Depot be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for themselves and Class Members, further request that upon final trial or hearing, judgment be awarded against Home Depot in favor of Plaintiffs and Class Members, for:

(a)     With respect to Counts I–VI (violations of the federal RICO statute and

the Georgia RICO Act)--

(i)     threefold the actual, consequential and/or incidental damages sustained by Plaintiffs and Class Members, along with attorneys' fees, litigation expenses, and court costs, together with pre- and post-judgment interest at the highest legal rates;

(ii)    equitable relief, as may be appropriate, including an equitable accounting for all benefits, consideration, and gross revenue received, directly or indirectly, by Home Depot (and/or its co-conspirators) from payment card transactions made on the stolen and compromised payment cards during the time of the Home Depot Data Breach, including the imposition of a constructive trust, the voiding of unlawful transfers, the disgorgement of all ill-gotten gross revenue, and/or all amounts by which Home Depot (and/or its co-conspirators) have been unjustly enriched; and

(iii)   injunctive relief (as set forth above).

(b)   With respect to Counts VII–XII:

(i)     actual, consequential, incidental, and/or statutory damages to be determined by the trier of fact;

(ii)    punitive damages;

(iii)   all amounts by which Home Depot (and/or its co-conspirators) have been unjustly enriched;

(iv)    an equitable accounting for all benefits, consideration, and gross revenue received, directly or indirectly, by Home Depot (and/or its co-conspirators) from payment card transactions made on the stolen and compromised payment cards during the time of the Home Depot Data Breach, including the imposition of a constructive trust, the voiding of unlawful transfers, the disgorgement of all ill-gotten gross revenue, and/or all amounts

by which Home Depot (and/or its co-conspirators) have been unjustly enriched;

(v) injunctive relief (as set forth above);

(vi) pre- and post-judgment interest at the highest legal rates;

(vii) attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case; and

(c) For all Counts, such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs, for themselves and all others similarly situated, respectfully demand a trial by jury on all claims so triable.

Date: October 21, 2014.

Respectfully submitted,

By: /s/      *John E. Suthers*
John E. Suthers
**SUTHERS LAW FIRM**
119 West Perry Street
Savannah, GA 31401
Telephone: (912) 232-6767
Facsimile: (912) 232-1958
Email: jes@sutherslaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASS**

**OF COUNSEL:**

Richard L. Coffman
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
Telephone: (409) 833-7700
Facsimile: (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

Mitchell A. Toups
**WELLER, GREEN TOUPS & TERRELL, LLP**
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 838-6780 (FAX)
Email: matoups@wgttlaw.com

G. Robert Blakey
Professor of Law Emeritus
Notre Dame Law School*
7002 East San Miguel Ave.
Paradise Valley, AZ 85253
Telephone: (574) 514-8220
Email: blakey.1@nd.edu
* Noted for identification only